## McCabe v. Hanover Township School District et al.

Before Valentine, P. J., Aponick and Farrell, JJ.

*Arthur A. Maguire*, for complainant.

*Harrington Adams*, Deputy Attorney General, and *Joseph Miesskowski*, for respondents.

VALENTINE, P. J., December 11, 1946.—The question in this case is the constitutionality of the Act of June 20, 1939, P. L. 482 (section 1205 (a) of the

School Code), or more specifically the proviso contained in the said act, which reads as follows:

"Provided, however, That from the effective date of this act until the first day of July, one thousand nine hundred forty-one, boards of school directors (or boards of public education) may, under the provisions of this section, terminate the service of any professional employe who has attained the age of sixty-eight; from the first day of July, one thousand nine hundred forty-one until the first day of July, one thousand nine hundred forty-three, any professional employe who has attained to the age of sixty-six; from the first day of July, one thousand nine hundred forty-five, any employe who has attained to the age of sixty-four; and on and after the first day of July, one thousand nine hundred forty-seven, any professional employe who has attained to the age of sixty-two."

Plaintiff attacks the constitutionality of said proviso on the following grounds:

"(a) Because it violates article I, sec. 9, of the Constitution of the Commonwealth of Pennsylvania, and, the fourteenth amendment of the Federal Constitution in that it amounts to the deprivation of property without due process of law.

"(b) Because it violates article I, sec. 17, of the Constitution of the Commonwealth of Pennsylvania, and article I, sec. 10, cl. 1, of the Federal Constitution with respect to the constitutional inhibition to any law impairing the obligation of contracts.

"(c) Because it violates article III, sec. 3, of the Constitution of the Commonwealth of Pennsylvania with respect to the constitutional inhibition that no bill . . . shall be passed containing more than one subject, which shall be clearly expressed in its title.

"(d) Because it violates article III, sec. 3, of the Constitution of the Commonwealth of Pennsylvania in being an amendatory act and not an act complete in it-

self, no notice is given in the title of the act that it amends section 14 of the Act of July 18, 1917, P. L. 1043, which gives a contributor who is a professional employe 62 years of age or older, up to the age of 70 years, the privilege of electing to retire during said period of voluntary retirement.

"(e) Because it violates article III, sec. 6, of the Constitution of the Commonwealth of Pennsylvania with respect to the amendment of laws.

"(f) That said section, or so much thereof as the return sets forth as authority of the board of school directors to terminate plaintiff's contract, being set forth under a 'Proviso' is in violation of the proper purpose of a proviso, in that it is an enlarging and inconsistent proviso and is void.

"(g) That said section, or so much thereof as the return sets forth as authority of the board of school directors to terminate plaintiff's contract, is arbitrary, discriminatory and unreasonable, and not a proper exercise of the police power in terminating the services of professional employes on the attainment of certain ages at and during certain periods of time. An examination thereof shows no general application, and being inconsistent in that it does not apply to all professional employes alike and predicated upon no reasonable or basic classification."

The facts in the case are, of course, uncontroverted. For many years, prior to February 28, 1946, plaintiff was a teacher in the schools of defendant school district. Upon the passage of the Teachers' Tenure Act of April 6, 1937, P. L. 213, a written contract was entered into in the form required by the act. Plaintiff attained the age of 64 years on February 27, 1946, and on February 28, 1946, in conformity with the provisions of the Act of 1939, supra, his contract of employment was terminated by resolution of the board of school directors. Thereafter, since March 1946, plaintiff has received and accepted a retirement allowance

under the provisions of the Act of July 18, 1917, P. L. 1043, as amended.

Plaintiff's contentions may be summarized as follows:

1. That the act violates article I, sec. 9, of the State Constitution and the fourteenth amendment of the Federal Constitution, in that it deprives plaintiff of his property without due process of law. That it violates article I, sec. 17, of the State Constitution and article I, cl. 1, of the Federal Constitution in that it impairs the obligation of plaintiff's contract.

2. That the title to the act is defective and in violation of article III, sec. 3, of the State Constitution. That the act violates article III, sec. 6, of the State Constitution with respect to the amendment of laws.

3. That the authority given by the proviso of the act to the board of school directors to terminate plaintiff's contract is void. Also that the power conferred upon the board to terminate said contract is arbitrary, discriminatory and unreasonable.

### Discussion

1. The act is an amendment to the School Code. However, plaintiff asserts that it violates his constitutional rights under the Retirement Act and deprives him of his property without due process of law. He also contends that although the amendment purports to reserve the right of voluntary retirement, as given under the Act of July 18, 1917, P. L. 1043, it improperly confers upon the board of school directors the power to terminate the contract between plaintiff and defendant school district.

That plaintiff's contract of employment with defendant district was made subject to the right of the legislature to change or modify the provisions of the School Code, upon which it is based, is undoubted. In Teacher's Tenure Act Cases, 329 Pa. 213, at page 225,

our Supreme Court, through Chief Justice Kephart, said:

"While the legislature has set up in the new Act a tenure system for teachers and has provided for their qualifications, compensation and contracts, all of these provisions, and the contracts themselves, have written into them by implication from the Constitution a distinct understanding that subsequent legislation may change, modify or abolish the existing features of the school system of the teachers' contracts. This determination flows from the fact that if the Constitution is to be operative at all times, we cannot restrict it so that it becomes stagnant, and expose it to future ruin by so doing. . . . And such future action can, for the same reason, be taken without producing an impairment of the obligations of the contracts for which the new Act provides because the Constitution only permits such contracts to be made subject to the right of change or regulation by future legislatures." To the same effect is Walsh v. Philadelphia School District, 144 Pa. Superior Ct. 321; 343 Pa. 178.

Plaintiff's rights under the Retirement Act were based upon his contract as teacher, executed pursuant to the provisions of the School Code. This contract was subject to the right of the legislature to change or modify the provisions of the School Code upon which it was based. A change in the School Code, which resulted in affecting plaintiff's right under the Retirement Act cannot be deemed violative of the Constitution on the theory that it amounts to an improper deprivation of plaintiff's property, or that it impaired the obligation of his contract with the State, which came into being under and by virtue of the Retirement Act.

Until the time arrived when plaintiff might retire, his retirement pay was but an inchoate right, but when the conditions were satisfied the retirement pay became a vested right: Retirement Board v. McGovern

et al., 316 Pa. 161, 169. When the time arrived, and plaintiff might have received the benefit of his retirement pay, he did not actually exercise the right of retirement, but he did acquiesce in the action of the board, now complained of, by receiving his retirement allowance under the act.

Even though plaintiff acquired vested rights under the Retirement Act, it does not necessarily follow that the amendment in question is unconstitutional. By passing the amendment, the legislature, in the exercise of its sovereign power, has, in effect, declared that the compulsory retirement of teachers who are 64 years of age tends to promote the general welfare of the public and is for the betterment of the public school system: Campbell v. Aldrich et al., 159 Ore. 208, 79 P. (2d) 257. The wisdom of such legislation is not for our determination. The requirement that teachers reaching a designated age shall retire was an exercise of the police power of the Commonwealth to which vested rights must yield (Home Bldg. & Loan Assn. v. Blaisdell et al., 290 U. S. 398; 88 A. L. R. 1481) if such power was exercised for an end which is, in fact, public (Nebbia v. New York, 291 U. S. 502; 89 A. L. R. 1469), and if the means adopted are reasonably adapted to the accomplishment of that end: Treigle v. Acme Homestead Assn., 297 U. S. 189; 101 A. L. R. 1284. We think it manifest that in the instant case all these conditions are present, and if so, private rights must yield to the public welfare when a different educational policy has been determined through the exercise of the police power: Campbell v. Aldrich, supra.

"All contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power, because if the legislature has no power to alter its police laws when contracts would be affected, then the most important and valuable reforms might be precluded by the simple device

of entering into contracts for the purpose of doing that which otherwise might be prohibited": 6 R. C. L. 347.

The true principle is, we think, well expressed in 12 Am. Jur. 54, §421, as follows:

"The constitutional protection of the obligation of contracts is necessarily subject to the police power of the state, and therefore a statute passed in the legitimate exercise of the police power will be upheld by the courts, although it incidentally destroys existing contract rights. This principle applies to contracts made with the state, as well as to contracts between individuals. Although the obligation of contracts must yield to a proper exercise of the police power and vested rights cannot inhibit proper exertion of the power, it must be exercised for an end which is in fact public, and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive. All contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power. This is based on the principle that if the legislature has no power to alter its police laws when contracts will be affected, then the most important and valuable reforms may be precluded by the simple device of entering into contracts for the purpose of doing that which otherwise may be prohibited."

2. The provision of article III, sec. 3, of the State Constitution, is that "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title."

The title to the amending Act of 1939, under consideration, sets forth ". . . by defining professional employes, substitutes and temporary employes, and further regulating the employment, dismissal, demotion and retirement of such employes."

Plaintiff's position, as stated in the brief of his counsel, is that "complaint is made that the Act of 1939 contains more than one subject not clearly expressed in its title; and that no notice is given in the title that it amends section 14, par. 1, of the Act of July 18, 1917, P. L. 1043 (the Retirement Act)".

Unless a substantive matter, entirely disconnected with the named legislation, is included within the bill, the act will not be declared in violation of article III, sec. 3, of the Constitution: Kelley v. Earle et al., 325 Pa. 337.

In Poor District Case, 329 Pa. 390, 399, Mr. Justice Drew said:

"There is no violation of this clause when various subjects are connected with and germane to the one general object of the legislation. Plurality of subjects is not objectionable so long as they are reasonably germane to each other: Mallinger v. Pittsburgh, 316 Pa. 257, 261. Only when its subjects are dissimilar is a law to be stricken down: Booth & Flinn, Ltd., v. Miller, 237 Pa. 297, 303. . . ." And on page 402:

"It must be remembered that the constitutional provision as to titles was intended to curb 'the vicious practice . . . of incorporating in one bill a variety of distinct and independent subjects of legislation (the real purpose of which) was often and sometimes intentionally disguised by a misleading title or covered by the all-comprehensive phrase, "and for other purposes" with which the title of many "omnibus" bills concluded': Road in Phoenixville, 109 Pa. 44, 48; Sugar Notch Borough, 192 Pa. 349, 355. It cannot be contended that any such thing was attempted or resulted here."

In this connection, the fact that plaintiff's rights under the Retirement Act are based upon the School Code, which is expressly referred to in the title of the amending act, is not to be overlooked.

In Gumpert's Estate, 343 Pa. 405, 407, Mr. Justice Horace Stern stated the principle governing the constitutional question here presented, as follows:

"It is unnecessary to elaborate upon the oft-repeated principle that all the Constitution requires is that the title should put persons of a reasonably inquiring state of mind on notice of the general subject matter of the act. The incidental provisions of the statute need not be enumerated or indexed in the title if they are germane to the legislation as a whole. 'Unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill, the act should not be declared as a violation of the Constitution by reason of its title offending Section 3 of Article III.'"

This same doctrine is enunciated in the more recent case of Commonwealth v. American Gas Co., 352 Pa. 113, 118, wherein Mr. Justice Allen M. Stearne collates the authorities on the subject and cites, with approval, the language above quoted from Gumpert's Estate.

Article III, sec. 6, of the State Constitution, invoked by plaintiff, applies only to express amendments and does not compel every act to recite all other acts that its operation may incidentally affect: Hadley's Case, 336 Pa. 100. We cannot conclude that the amendment in question violates this section.

3. Plaintiff complains that the authority conferred upon the board of school directors to terminate his contract is void because the language empowering the board to take such action is set forth in a "Proviso". It may be conceded that, in general, the purpose of a proviso is to qualify or modify the general language of an enacting clause, but while this is its primary purpose, it may have a general application: United States v. G. Falk & Bros., 204 U. S. 143. It may sometimes create or mean additional legislation: Burlingham v.

Crouse, 228 U. S. 459. While ordinarily, in statutes, it is to be strictly construed and confined to what precedes it, it may, if necessary, be extended to the entire act: Carter, Webster & Co. v. U. S., 143 Fed. 256. In the instant case the proviso, in reality, limits or qualifies the contract as set forth in section 1205 of the code.

We think it clear that the authority given the board of school directors to terminate the contract of a teacher who has reached a designated age cannot be held violative of the State or Federal Constitution upon the contention that it is arbitrary, discriminatory and unreasonable: Campbell v. Aldrich, supra, 261.

The Tenure Act was not designed to confer any specific privileges or immunities upon the teachers to retain permanently their positions regardless of the future policy of the legislature as to their employment: Teacher's Tenure Act Cases, supra, 231. Walsh v. School District, supra.

An act of assembly should not be held unconstitutional unless it is clearly, strongly and imperatively prohibited. Nothing but a clear violation of the Constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void. Every presumption should be indulged in its favor and one who claims an act is unconstitutional must prove his case beyond a reasonable doubt. It is the duty of every judge to search for a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible: Commonwealth ex rel. Schnader v. Liveright et al., 308 Pa. 35.

We are constrained to the opinion that in the instant case plaintiff has not made the required showing.

Therefore, now, December 11, 1946, plaintiff's demurrer is overruled and judgment entered for defendants.